IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VELVIE GRAY, GARY HONBARGER,      )
MONICA RANEY, CRYSTAL REESE,      )
NORMAN RICHARD RUFTY, TOMMY       )
ELLIS, and VIOLA ELLIS, on their )
own behalf and on behalf of all  )
others similarly situated,       )
                                 )
            Plaintiffs,          )
                                 )
     v.                          )          1:19CV1234
                                 )
BLUE CROSS AND BLUE SHIELD OF    )
NORTH CAROLINA, FRANK PAPA,      )
ERWIN BETTE, and FTI CONSULTING, )
INC.,                            )
                                 )
            Defendants.          )

## <u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

Presently before this court is a Motion to Dismiss, (Doc. 24), for failure to state a claim, filed by Defendants Frank Papa ("Papa") and Erwin Bette ("Bette"); a Motion to Dismiss, (Doc. 26), for failure to state a claim, filed by Defendant Blue Cross and Blue Shield of North Carolina ("BCBS"); and a Motion to Dismiss the Second Amended Complaint and Motion to Strike in the Alternative, (Doc. 28), filed by Defendant FTI Consulting, Inc. ("FTI"). These motions are ripe for adjudication.

## I. **FACTS**

### A. **Statement of the Facts**

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). The facts, taken in the light most favorable to Plaintiffs, are as follows.

Plaintiffs Velvie Gray, Gary Honbarger, Monica Raney, Crystal Reese, Norman Richard Rufty, and Tommy Ellis were employees of Durafiber Technologies ("Durafiber"), an "industrial fiber producer" with plants located in both Salisbury and Shelby. (Second Am. Complaint (Second Am. Compl. (Doc. 20) ¶ 2.) Plaintiff Viola Ellis is married to Tommy Ellis and was a participant in Durafiber's benefit plan. (Id. ¶ 13.) Defendant Papa was the Chief Executive Officer of Durafiber. (Id. ¶ 21.) Defendant Bette was the Chief Financial Officer of Durafiber. (Id. ¶ 22.)

Defendant BCBS provided group health benefits for Plaintiffs as employees of Durafiber. (Id. ¶¶ 3-4.) During "[e]ach pay period, the Plaintiffs paid premiums for their group health coverage." (Id. ¶ 5.) BCBS worked with Durafiber to provide an Administrative Service Only plan ("the Plan"), entered into based on an Administrative Services Agreement

-2-

("ASA"). (Doc. 25-1.)[1] The ASA designated Durafiber – which was named Performance Fibers Operations at the time, (Second Am. Compl. (Doc. 20) ¶ 44), as both the Plan Sponsor and the Plan Administrator. (ASA (Doc. 25-1) ¶ 1.26.) BCBS was paid "Administrative Fees, Miscellaneous Fees and Claims Expenses" under the ASA. (Id. ¶ 3.1.) Moreover, BCBS's name was identified "on the wallet ID cards given to the workers to reflect their coverage." (Second Am. Compl. (Doc. 20) ¶ 3.) Under the Plan, Durafiber was obligated to self-fund the employees' healthcare coverage. (ASA (Doc. 25-1) at 1.) The ASA made clear that "BCBSNC does not have any fiduciary responsibility with respect to the Group Health Plan, except as may be expressly delegated . . . pursuant to this Agreement." (Id. ¶ 2.4.) It delegated to BCBS "authority with respect to the structure, payment terms, and other contract terms in connection with its Provider networks." (Id.)

Plaintiffs highlight that BCBS also had the ability to "review the ability of Durafiber to self-fund and pay claims." (Second Am. Compl. (Doc. 20) ¶ 55.) More specifically, the ASA stated that Durafiber must, if asked, "provide BCBSNC with

_____

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-3-

relevant financial information . . . sufficient to permit BCBSNC to determine whether [Durafiber] can meet its financial obligations under this Agreement." (ASA (Doc. 25-1) ¶ 3.3.) The ASA also required Durafiber to "delegate to BCBSNC the authority to make discretionary decisions, as required by [the ASA], including, without limitation, the discretion to make determinations regarding claims for benefits . . . ." (Id. ¶ 4.2.) The role of BCBS under the ASA extended to "processing claims and appeals," (Id. ¶ 7.1), as well as "[c]alculat[ing] benefits, prepar[ing] checks, and communicat[ing] through existing systems and in accordance with established procedures and processes." (Id. ¶ 7.2a.)

On July 13, 2017, Papa signed a letter issued to Durafiber employees stating that the Salisbury, Shelby, and Winnsboro plants might be closing on September 11, 2017. (Second Am. Compl. (Doc. 20) ¶¶ 48-49.) However, Plaintiffs allege, and this court accepts as true, that "by that time, closure was certain." (Id. ¶ 8.) This July letter informed workers "that the coverage cutoff for their group health plan was October 1, 2017." (Id. ¶ 9.)

Meanwhile, FTI had been retained in June 2017 to help with the restructuring of Durafiber as it approached bankruptcy. (Doc. 29 at 4.) Plaintiffs allege that FTI's role involved

-4-

"managing vendor relationships, developing a weekly cash flow forecasting model, taking a lead role in general financial and operational strategy and execution, and assisting in the public . . . wind-down of the business." (Second Am. Compl. (Doc. 20) ¶ 122.) Plaintiffs allege that Papa and Bette followed the advice of FTI when deciding which claims to pay. (Id. ¶ 117.)

As Durafiber's financial condition worsened, Plaintiffs allege that Papa and Bette "wrongfully declined to pay claims of . . . health plan benefit claimants" and treated "claims in a preferential manner" based on which employees they hoped to retain in their future endeavors. (Id. ¶¶ 117, 120.) Plaintiffs allege that Papa and Bette specifically decided which benefit claims were paid. (Id. ¶ 10.) However, even after Durafiber stopped paying consistently into the Plan, BCBS continued to inform Plaintiffs and other employees that they were covered. (Id. ¶ 7.) Plaintiffs allege that BCBS was obligated, as a fiduciary under the Employee Retirement Income Security Act of 1974 ("ERISA"), to "provide truthful and accurate claim information to participants, such as whether there were really funds to pay claims." (Id. ¶ 4.)

Ultimately, Plaintiffs did "not receive payment on numerous valid medical claims despite the fact that they were covered," as Durafiber stopped funding the Plan. (Id. ¶ 3.) Papa and Bette

-5-

formed Fiber Innovators International, LLC, to acquire some Durafiber facilities "after diverting assets away from the benefit plan and sending Durafiber into bankruptcy." (Id. ¶ 10.) BCBS ultimately "refused" to pay the claims and informed Plan participants that it was solely Durafiber's obligation to pay the Plaintiffs. (Id. ¶ 6.)

**B.    Procedural History**

Plaintiffs filed their Second Amended Complaint on January 24, 2020. (Second Am. Compl. (Doc. 20).) The Second Amended Complaint pursues a class action against multiple defendants on seven total claims. Claim One is a Breach of Fiduciary Duty claim, brought under ERISA against all four Defendants: Papa, Bette, BCBS, and FTI. (Id. ¶¶ 126-64.) Claim Two is a Claim for Benefits under the Plan, pursuant to ERISA, also brought against all Defendants. (Id. ¶¶ 170-74.) Claim Three seeks equitable relief under ERISA and is asserted against all defendants as "jointly and severally liable tortfeasors." (Id. ¶¶ 176-81.) Claim Four, the final claim still in dispute, is a COBRA continuation claim brought exclusively against BCBS. (Id. ¶ 183-95.) Plaintiffs have agreed to dismiss all other outstanding claims (Claims Five, Six, Seven, Eight, Nine and Ten), (Pls.' Resp. to Def. FTI's Mot. to Dismiss ("Pls.' Resp. to FTI") (Doc. 32) at 8), which were brought under state law as

-6-

"alternative" claims. (Pls.' Resp. to Defs. Frank Papa and Erwin
Bette's Mot. to Dismiss ("Pls.' Resp. to Papa and Bette") (Doc.
33) at 18.)

Defendants Papa and Bette filed a Motion to Dismiss, (Doc.
24), as did BCBS, (Doc. 26), and FTI, (Doc. 28). Plaintiffs
responded to each motion. (Docs. 31-33.) All Defendants
subsequently filed replies. (Docs. 34-36.)

## II.  **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)). A claim is facially
plausible provided the plaintiff provides enough factual content
to enable the court to reasonably infer that the defendant is
liable for the misconduct alleged. Id. The pleading setting
forth the claim must be "liberally construed" in the light most
favorable to the non-moving party, and allegations made therein
are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421
(1969). However, the "requirement of liberal construction does
not mean that the court can ignore a clear failure in the
pleadings to allege any facts [that] set forth a claim." Estate

of Williams—Moore v. Alliance One Receivables Mgmt., Inc., 335
F. Supp. 2d 636, 646 (M.D.N.C. 2004).

## III. **ANALYSIS**

### A. **Claim One: ERISA Breach of Fiduciary Duty**

Plaintiffs first seek relief for breach of fiduciary duty.
ERISA creates a cause of action for breach of fiduciary duties
with respect to the administration of an ERISA-governed
plan. 29 U.S.C. § 1132(a) (creating a cause of action under
ERISA); see 29 U.S.C. § 1104 (setting forth fiduciary duties
under ERISA). The Supreme Court has held that "a person is
a fiduciary with respect to a plan, and therefore subject to
ERISA fiduciary duties, to the extent that he or she exercises
any discretionary authority or discretionary control respecting
management of the plan . . . ." Varity Corp. v. Howe, 516 U.S.
489, 498 (1996) (internal quotation marks omitted). However, the
Court has also clarified that:

> In every case charging breach of ERISA fiduciary duty
> . . . the threshold question is not whether the
> actions of some person employed to provide services
> under the plan adversely affected a plan beneficiary's
> interest, but whether that person was acting as a
> fiduciary (that is, was performing a fiduciary
> function) when taking the action subject to
> complaint.

Pegram v. Herdrich, 530 U.S. 211, 226 (2000). In other words,
"[t]he same entity may function as an ERISA fiduciary in some
contexts but not in others." Darcangelo v. Verizon Commc'ns,

-8-

Inc., 292 F.3d 181, 192 (4th Cir. 2002). An ERISA fiduciary is any individual who de facto performs discretionary functions. Id. An entity is a fiduciary "only as to the activities which bring the [entity] within the definition" of fiduciary under the plan. Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992), as amended (July 17, 1992). To determine whether a defendant is "performing a fiduciary function," a court must "consider (1) whether the acts in question were like traditional fiduciary decisions, which are typically decisions about managing assets and distributing property to beneficiaries, and (2) whether treating these acts as fiduciary decisions under ERISA would lead to the undesirable federalization of large swaths of state law." Darcangelo, 292 F.3d at 193 (internal citations and quotation marks omitted). Notably, the Fourth Circuit liberally construes fiduciary status under ERISA. See Dawson-Murdock v. Nat'l Counseling Grp., Inc., 931 F.3d 269, 276-79 (4th Cir. 2019).

This court finds that Plaintiff has plausibly alleged that Defendants Papa, Bette, and BCBS were acting as fiduciaries under ERISA. However, Plaintiffs have not plausibly alleged that FTI was a functional fiduciary as defined by ERISA.

-9-

### 1. __Standing to Bring ERISA Fiduciary Claims__

First, Defendant BCBS raises the issue of Plaintiffs' standing to bring fiduciary claims under ERISA. Since standing is a jurisdictional issue and potentially dispositive, the court will address it before analyzing the merits of each fiduciary claim. Standing requires a plaintiff to have sustained actual injury and does not permit a plaintiff to sue on behalf of another absent legal authorization. See Townes v. Jarvis, 577 F.3d 543, 554 (4th Cir. 2009).

BCBS argues that Plaintiffs "may seek relief only on behalf of the Plan" when seeking relief for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109. (Def. BCBS Br. in Supp. of Mot. to Dismiss ("BCBS Br.") (Doc. 27) at 15.) This court agrees. Wilmington Shipping Co. v. New England Life Ins. Co., 496 F.3d 326, 334 (4th Cir. 2007) ("[A] plan participant may not sue under ERISA § 502(a)(2) unless he seeks recovery on behalf of the plan."). However, Plaintiffs adequately argue they are, in fact, bringing this claim on behalf of the Plan: the Complaint specifies that fiduciary Defendants "should be found personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of such fiduciary which have been made through use of assets of the plan by the

-10-

fiduciary. . . ." (Second Am. Compl. (Doc. 20) ¶ 167.) This
mirrors the language of 29 U.S.C. § 1109(a), which provides that
a fiduciary which breaches its responsibilities:

> shall be personally liable to make good to such
> plan any losses to the plan resulting from each such
> breach, and to restore to such plan any profits of
> such fiduciary which have been made through use of
> assets of the plan by the fiduciary, and shall be
> subject to such other equitable or remedial relief as
> the court may deem appropriate, including removal of
> such fiduciary.

29 U.S.C. § 1109(a). See also DiFelice v. U.S. Airways,
Inc., 235 F.R.D. 70, 76 (E.D. Va. 2006) (finding standing
in an ERISA fiduciary claim where the plaintiff's complaint
used nearly identical language). Thus, the Plaintiffs have
adequately framed their fiduciary claim as one on behalf of
the Plan, sufficient for standing at this stage.

## 2. ERISA Fiduciary Claim Against Papa and Bette

Papa and Bette contend that they do not qualify as
fiduciaries. "ERISA contemplates two general types of
fiduciaries," those fiduciaries that are explicitly "named" and
those that are "functional." Dawson-Murdock, 931 F.3d at 275-76.

Papa and Bette are not named as fiduciaries. However,
Plaintiffs argue they served as functional fiduciaries, which
would qualify them for liability under ERISA. Papa and Bette
argue they did not perform the duties of functional fiduciaries,
calling Plaintiffs' allegations "vague and conclusory." (Defs.

-11-

Papa and Bette Br. in Supp. of Mot. to Dismiss ("Defs. Papa and Bette Br.") (Doc. 25) at 18.)

Plaintiffs, however, provide a variety of specific allegations that Papa and Bette were functional fiduciaries. For example, Plaintiffs allege that Papa and Bette personally made decisions about which claims should be paid: Papa and Bette "wrongfully declined to pay claims of not only vendors but also health plan benefit claimants" and "chose certain smaller claims to pay while stalling on others." (Second Am. Compl. (Doc. 20) ¶ 117.) Though BCBS was in charge of initial grants or denials of claims, Plaintiffs allege that Papa and Bette "selectively arranged to have payments made under the medical plan to cover medical care received by certain employees" because they wanted to keep certain workers on. (Id. ¶ 120.) These alleged actions appear to fall squarely into the functional fiduciary category, as defined by Darcangelo, of "decisions about managing assets and distributing property to beneficiaries." Darcangelo, 292 F.3d at 193. Moreover, Plaintiffs note that Durafiber's Human Resources ("HR") department was "miniscule," (Second Am. Compl. (Doc. 20) ¶ 38), meaning Papa himself – not an HR representative – signed the July 13 letter which explained that medical coverage would continue until "September 30, 2017." (Id. ¶ 82.)

There is considerable dispute regarding the material facts at issue. Plaintiffs are not required to prove their claims at this stage: they have plausibly alleged that Defendants Papa and Bette were fiduciaries for the purposes of an ERISA action.

### 3.  ERISA Fiduciary Claim Against BCBS

Plaintiffs next contend that BCBS was also a functional fiduciary under the Plan and has breached its duty to Plaintiffs. Defendant BCBS was "sending written certifications to employee plan participants expressly assuring them that they were covered through September 30, 2017," even though BCBS "had reason to understand that Durafiber was in financial straits[.]" (Second Am. Compl. (Doc. 20) ¶ 3 (emphasis omitted).) Plaintiffs argue that a "reasonable . . . fiduciary administrator" should have taken action to provide assurances of payment when BCBS was telling plan participants they were pre-qualified for treatment through a certain date. (Id.) Plaintiffs allege BCBS thereby breached its fiduciary duties to secure assurances of payment by, among other allegations,

> failing to ensure funds existed to timely pay claims,
> failing to provide accurate and truthful information
> to plan participants, acting improperly to benefit
> certain participants at the expense of others, []
> acting in derogation of the terms of the [Plan];
> misleading employees about the status of the plan and
> whether it would or could pay covered claims; . . .
> and failing to perform investigation, audit or due
> diligence to ensure a viable plan that was able to pay
> claims . . . ."

-13-

(Pls.' Br. in Opp'n to Def. BCBS Mot. to Dismiss ("Pls.' BCBS Resp.") (Doc. 31) at 17-18.) Since fiduciary duty is determined in relation to the alleged breaches, the question remains whether BCBS was "performing a fiduciary function" when it took the actions alleged by Plaintiffs. Darcangelo, 292 F.3d at 193.

There are several distinct allegations about separate alleged breaches of fiduciary duty. First, the allegation that BCBS failed to ensure adequate funds remained in the Plan. Plaintiffs' attempt to point to BCBS' ability under the ASA to be aware of, and hold Durafiber accountable for, the Plan's underfunding. (Pls.' BCBS Resp. (Doc. 31) at 10-11.) However, this was not a legitimate fiduciary duty of BCBS, and there was therefore no breach of fiduciary duty. As Defendant BCBS points out, the Sixth Circuit in Briscoe v. Preferred Health Plan, Inc., held that a third party should not be "held liable for funds that were never contributed to the plan," and found no "fiduciary duty [that] required it to warn existing participants that the Plan was underfunded." 578 F.3d 481, 486 (6th Cir. 2009). The court found that where a defendant was "required to disclose material information to ERISA plan beneficiaries, those defendants were fiduciaries with discretionary authority over their plans' management – not fiduciaries solely through the exercise of control over a plan's assets." Id. The parties also

-14-

discuss Technibilt, a parallel case in this circuit with similar facts. Technibilt Grp. Ins. Plan v. Blue Cross & Blue Shield of N.C., 438 F. Supp. 3d 599 (W.D.N.C. 2020). That court found that, even though Technibilt self-funded the relevant plan, BCBS could plausibly bear fiduciary responsibility related to the processing and payment of claims because it "had discretion when to invoice Technibilt to fund the account and ultimately pay out the claims," and because "[a]ll claims were paid out of Blue Cross' general claims account." Id. at 605. Notably, the plan in Technibilt was not underfunded, and the plaintiffs' central claim in that case dealt with BCBS' own failure to process the claim in a timely manner – rather than with any failure by BCBS to actually ensure the account was funded.

Second, Plaintiffs separately allege that BCBS actively provided inaccurate and untruthful information by pre-certifying that certain procedures would be paid for. (Pls.' BCBS Resp. (Doc. 31) at 7.) At least one court within this circuit has focused on the accuracy of representations made to a policyholder by an entity like BCBS. Conner v. Associated Radiologists, Inc., Civil Action No. 2:19-cv-00329, 2020 WL 762858, at *6 (S.D. W. Va. Feb. 14, 2020) ("Plaintiff sufficiently alleges that ARI acted in a fiduciary capacity . . . by providing information about Plaintiff's ability to

-15-

access his benefits . . . [and making] representations about his ability to access his plan benefits in the future, thereby permitting Plaintiff to make an informed choice about retiring and accessing his benefits."). Plaintiffs have alleged that the communications pre-certified certain procedures. (Second Am. Compl. (Doc. 20) ¶¶ 142, 148.) Further facts may demonstrate that the communications by BCBS made fewer assurances than alleged here. However, accepting the facts as Plaintiffs present them, BCBS approved procedures in advance and actively represented that employees still had coverage, even when the Plan was severely underfunded and Durafiber was going bankrupt. (Id. ¶ 3.) This falls within the Darcangelo court's definition of a fiduciary function, as it involves "making decisions about 'managing assets and distributing property to beneficiaries.'" Darcangelo, 292 F.3d at 193 (quoting Pegram, 530 U.S. at 231). Thus, under these facts, Plaintiffs have adequately alleged a breach of fiduciary duty.

Third and finally, Plaintiffs allege that BCBS cooperated with Papa and Bette to preferentially distribute coverage to certain preferred employees. Plaintiffs argue that BCBS acted "in derogation of the terms of the [Plan]" in ways that "improperly . . . benefit[ted] certain participants at the expense of others." (Pls.' BCBS Resp. (Doc. 31) at 17-18.) These

-16-

allegations of breach seem to vaguely relate to Papa and Bette arbitrarily approving and denying claims based on the officers' future endeavors. However, Plaintiffs do not allege how BCBS participated in this scheme, or whether BCBS' initial determinations regarding claims were made subject to Papa and Bette's preferences. BCBS did have a legitimate fiduciary duty with regard to its initial acceptance and denial of claims. Courts have held that "[w]hen an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii)." Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio, 982 F.2d 1031, 1035 (6th Cir. 1993). In fact, BCBS accepts it has "expressly delegated fiduciary functions" related to the decision of whether to initially accept or deny benefit claims. (BCBS Br. (Doc. 27) at 12.) However, Plaintiffs have not directly alleged any facts to support the conclusion that BCBS made its decision to initially grant or deny claims based on the preferences of Papa and Bette in breach of fiduciary duty. Plaintiffs have not plausibly alleged facts to establish that BCBS breached this accepted fiduciary duty.

The Fourth Circuit has held that fiduciary status under ERISA should be construed liberally. Dawson-Murdock, 931 F.3d at

-17-

276–79. Given Dawson's mandate, and the low standard at this motion to dismiss stage, this court will decline to dismiss this claim against BCBS. Plaintiffs have plausibly alleged, at this stage in the proceedings, that BCBS breached fiduciary duties under the Plan – specifically by misrepresenting coverage via pre-certification. However, as in Technibilt, this finding "is made without prejudice to Blue Cross' ability to raise its arguments again in a summary judgment motion after the full development of the factual record." Technibilt, 438 F. Supp. 3d at 606.

### 4. Fiduciary Claim Against FTI

Plaintiffs also allege that FTI is a functional fiduciary that breached its fiduciary duties. However, Plaintiffs fail to plausibly allege that FTI was a functional fiduciary. Plaintiffs expressly allege that FTI was hired to advise and develop models, rather than exercise actual control over any claims-related decision-making. (Second Am. Compl. (Doc. 20) ¶¶ 117, 122.) The exercise of "discretionary authority" and "discretionary control" are central to the definition of a fiduciary under ERISA. 29 U.S.C. § 1002(21)(A). Plaintiffs do not allege that FTI possessed discretionary control over the plan. FTI had no authority or direct control over the Plan or related claims. As FTI notes, a non-existent fiduciary duty

-18-

cannot be breached, (FTI's Br. (Doc. 29) at 6), and Plaintiffs have not plausibly alleged facts to demonstrate that FTI owed them any fiduciary duty. Plaintiffs argue that FTI "helped set corporate communications" and that "hired advisors, consultants and third-party administrators can be fiduciaries." (Pls.' Resp. to FTI (Doc. 32) at 18.) However, such advisors are only converted into fiduciaries to the extent they exercise actual control over decision-making. The Fifth Circuit has discussed this issue at length, even elaborating on the case most relied on by Plaintiffs, Brink v. DaLesio, 496 F. Supp. 1350 (D. Md. 1980), rev'd on other grounds, 667 F.2d 420 (4th Cir. 1981). As the Fifth Circuit persuasively describes:

> We emphasize that our affirmance does not automatically transform into fiduciaries conscientious or even miscreant professionals, consultants, advisors, or sales representatives who provide necessary services to ERISA plans. This is so even if these persons render advice and play influential roles by virtue of the expertise that they possess or the capacities in which they act. Nor does our decision inexorably make fiduciaries of persons who carry out perfunctory and ministerial, albeit important, duties and responsibilities for a plan. To be fiduciaries, such persons must exercise discretionary authority and control that amounts to actual decision making power.

Reich v. Lancaster, 55 F.3d 1034, 1049 (5th Cir. 1995). The Reich court further noted that in Brink, which Plaintiffs cite heavily, the insurance agent found to be a fiduciary was "solely responsible for formulating specifications . . . [and] made

-19-

[certain] initial decisions . . . ." Id. at 1050. Plaintiffs'
allegations about FTI have not neared this level of actual
authority. Plaintiffs have failed to assert facts beyond FTI's
influence and assistance to Papa and Bette – indeed, Plaintiffs
allege elsewhere in their Amended Complaint that Papa and Bette
themselves made decisions about claims and merely took FTI's
guidance into account when making decisions. (Second Am. Compl.
(Doc. 20) ¶ 117, 120, 123.)

Plaintiffs have not plausibly alleged that FTI is a
fiduciary for purposes of ERISA. This court will therefore grant
Defendant FTI's motion to dismiss.

**B.    ERISA Benefits Claims**

Next, Plaintiffs bring ERISA benefits claims under 29
U.S.C. § 1132(a)(1)(B). That statute entitles a plaintiff to
bring civil suit "to recover benefits due to him under the terms
of his plan, to enforce his rights under the terms of the plan,
or to clarify his rights to future benefits under the terms of
the plan." 29 U.S.C. § 1132(a)(1)(B).

**1.    Benefits Claim Against Papa and Bette**

In response to Plaintiffs' claim for ERISA benefits, Papa
and Bette argue only that Plaintiffs have failed to exhaust
their administrative remedies, (Defs. Papa and Bette Br. (Doc.
25) at 18), arguing that "courts have consistently required

-20-

administrative exhaustion as a prerequisite for an ERISA benefits claim." (Id. at 19.) Papa and Bette note in their reply brief that "the period of time . . . in which Plaintiffs had the option of pursuing administrative remedies, and failed to do so, is the period of time before the Plan's dissolution." (Doc. 35 at 8.)

In general, an ERISA plan participant "must both pursue and exhaust plan remedies before gaining access to the federal courts." Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226 (4th Cir. 2005); see also Makar v. Health Care Corp. of Mid-Atl. (CareFirst), 872 F.2d 80, 82 (4th Cir. 1989) ("This exhaustion requirement rests upon the Act's text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes."). A failure to exhaust administrative remedies may be excused if any attempt to pursue those remedies would be futile. This exception, however, is narrow: before the exhaustion requirement may be waived on this basis, the plan participant must make a "clear and positive" showing of futility. Kunda v. C.R. Bard, Inc., 671 F.3d 464, 471-72 (4th Cir. 2011); Hickey v. Digital Equip. Corp., 43 F.3d 941, 945 (4th Cir. 1995); Makar, 872 F.2d at 83; Fulk v. Hartford Life Ins. Co., 839 F. Supp. 1181, 1186 (M.D.N.C. 1993); see also Kern v. Verizon Commc'ns, Inc., 381 F. Supp. 2d 532, 537 (N.D. W. Va.

2005) ("The futility exception . . . is quite restricted, and has been applied only when resort to administrative remedies is clearly useless." (quoting Commc'n Workers of Am. v. AT&T, 40 F.3d 426, 432 (D.C. Cir. 1994)) (internal quotation marks omitted)).

However, exhaustion of administrative remedies is considered an affirmative defense under ERISA, making a Rule 12(b)(6) motion the improper vehicle for it. See, e.g., Rogers v. UnitedHealth Grp., Inc., 144 F. Supp. 3d 792, 803 (D.S.C. 2015); Taylor v. Oak Forest Health and Rehab., LLC, No. 1:11-CV-471, 2013 WL 4505386, at *3 (M.D.N.C. Aug. 22, 2013). This court will not dismiss claims at this stage based on an affirmative defense. "The burden of establishing an affirmative defense rests with the defendant, and 'a motion to dismiss filed under [Rule] 12(b)(6) . . . generally cannot reach the merits of an affirmative defense.'" Taylor, 2013 WL 4505386, at *3 (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc)). Thus, this court will deny Defendant Papa and Bette's motion on this count.

## 2. Benefits Claim Against BCBS

Defendant BCBS urges this court to dismiss the ERISA benefits claim against it because BCBS "is not the proper defendant for such a claim," arguing that "only the Plan itself

-22-

is the proper defendant for a claim brought under
§ 1132(a)(1)(B)." (BCBS Br. (Doc. 27) at 21.) BCBS then notes
that even if "certain fiduciaries may also be proper
defendants," BCBS was not a fiduciary "with respect to ensuring
that there [were] funds to pay for the claims and ultimately
paying for those claims." (Id.) Therefore, BCBS argues that
Plaintiffs would be unable to recover claims for benefits from
BCBS and therefore do not state a plausible claim under this
count. (Id. at 22.)

In the case cited most heavily by BCBS, a District Court in
Arizona noted that for a "self-funded" plan, a third-party
administrator who "would not be responsible to pay the claims"
was an illogical defendant for a benefits claim. Spinedex
Physical Therapy, U.S.A., Inc. v. United Healthcare of Arizona,
Inc., No. CV-08-457-PHX-ROS, 2011 WL 13077433, at *2 (D. Ariz.
Nov. 2, 2011). BCBS argues in its Reply Brief that "DuraFiber,
as Plan Sponsor, and not Blue Cross NC, had the obligation to
provide the funds for the claims for payment and had the
ultimate payment obligation." (Doc. 34 at 8.) Other courts have
agreed with this reasoning. See, e.g., Riley v. Blue Cross &
Blue Shield of Miss., No. 3:09CV674HTW-LRA, 2011 WL 2946716, at
*3 (S.D. Miss. July 21, 2011) ("The law is settled and clear in
the Fifth Circuit and its District Courts that Blue Cross, as a

-23-

third party administrator only, is not a proper party to an ERISA action seeking plan benefits."); <u>Klover v. Antero Healthplans</u>, 64 F. Supp. 2d 1003, 1011 (D. Colo. 1999) ("No provision of 29 U.S.C. § 1132(a)(1)(B) would entitle the [plaintiffs] to recover from the third party administrators for non-payment of benefits.")

    One court within the Fourth Circuit found that "[i]n determining whether a defendant is properly named in an ERISA benefits action, a court must consider whether the defendant has influenced the handling of the plaintiff's claim." <u>Sawyer v. Potash Corp. of Saskatchewan (Potashcorp)</u>, 417 F. Supp. 2d 730, 737 (E.D.N.C. 2006). Durafiber served as both the formal Plan Sponsor and the Plan Administrator. (ASA (Doc. 25-1) ¶ 1.26.) However, BCBS has acknowledged that it was "responsible for making the decision to allow or deny all initial claims for benefits" in addition to its traditional, ministerial responsibilities. (BCBS Br. (Doc. 27) at 12.) Performing the initial analysis of benefits claims certainly qualifies as "the handling of the plaintiff's claim[s]." <u>Sawyer</u>, 417 F. Supp. 2d at 737. In Sawyer, the court looked for any evidence that the "defendants exerted any influence on . . . [the] decision to deny benefits to plaintiff." <u>Id.</u> In this case, even BCBS does not dispute that it played a role in choosing to deny

-24-

Plaintiffs' benefits. Based on this framework, BCBS is a proper defendant, as it played a role in denying benefits rather than functioning "as a third party administrator only." <u>Riley</u>, 2011 WL 2946716, at *3. Though the development of facts may demonstrate otherwise at future proceedings, Defendant BCBS' motion on this claim will be denied.

### 3.   **Benefits Claim Against FTI**

Plaintiffs have not plausibly alleged that FTI was involved in the claims process and decisions regarding benefits. Plaintiffs merely allege that FTI led the restructuring of Durafiber and advised Papa regarding internal communications. (Pls.' Resp. to FTI (Doc. 32) at 17.) At no point do Plaintiffs plausibly state any facts to support the conclusion that FTI played an active role in benefits decisions, or that FTI would otherwise be liable for benefits under ERISA. This claim will be dismissed.

### C.   **ERISA Equitable Relief**

Next, Plaintiffs seek ERISA equitable relief under 29 U.S.C. § 1132(a)(3).[2] Under § 1132(a)(3), "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A)

---

[2] Plaintiffs originally designate their claim – incorrectly – as falling under 29 U.S.C. § 1132(a)(1)(B). (Second Am. Compl. (Doc. 20) ¶ 177.) They later correct this error to correctly characterize the claim as falling under 29 U.S.C. § 1132(a)(3.) (<u>See, e.g.,</u> Pls.' Resp. to FTI (Doc. 32) at 21.)

to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3).

However, "[i]ndividualized equitable relief under § 1132(a)(3) is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions." Korotynska v. Metro. Life Ins. Co., 474 F.3d 101, 102 (4th Cir. 2006) (citing Varity Corp., 516 U.S. at 515). The Fourth Circuit, as well as another court within this district, have both held that a plaintiff may not proceed with causes of action under both § 1132(a)(1)(B) and § 1132(a)(3). Korotynska, 474 F.3d at 106 (holding that "a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3)"); Exact Scis. Corp. v. Blue Cross & Blue Shield of N.C., No. 1:16CV125, 2017 WL 1155807, at *8 (M.D.N.C. Mar. 27, 2017) (finding, at the motion to dismiss stage, that a plaintiff may not proceed with a § 1132(a)(3) claim where relief was potentially available under § 1132(a)(1)(B)). Though, as Plaintiffs point out, the exact facts of these cases differ, that does not alter the procedural availability of equitable relief in this scenario. (Pls.' BCBS Resp. (Doc. 31) at 22.) Plaintiffs are proceeding with their claims against BCBS, Papa, and Bette under § 1132(a)(1)(B).

Meanwhile, Plaintiffs failed to plausibly allege that FTI owed them any fiduciary duty. Plaintiffs pled facts only related to the equitable relief that might be owed to them by BCBS, failing to allege any basis for equitable relief from FTI. (Second Am. Compl. (Doc. 20) ¶¶ 179-81.) All of Plaintiffs' equitable relief claims under § 1132(a)(3) will therefore be dismissed.

### D. COBRA Continuation Claim Against BCBS

Finally, Plaintiffs bring a Consolidated Omnibus Budget Reconciliation Act ("COBRA") claim against Defendant BCBS under 29 U.S.C. § 1163(2). Plaintiffs allege that "Defendant failed to advise any other Plaintiffs or class members that the benefit plan was continuing for Mr. Ellis nor did it offer them the ability to participate in it." (Second Am. Compl. (Doc. 20) ¶ 189.) Plaintiffs claim they were "entitled to be informed by Blue Cross of COBRA continuation rights, including that while the coverage ended for many participants . . . by the end of September 2017, it actually continued for others such as Mr. Ellis . . . ." (Id. ¶ 188.) Regardless of whether BCBS was a functional fiduciary, however, § 1166(a) requires "the administrator," not any functional fiduciary, to provide this type of notification. 29 U.S.C. § 1166(a)(4). See also Richman v. Aetna Life Ins. Co., No. 92-1149, 1992 WL 208562, at *2 (4th Cir. Aug. 31, 1992) ("[R]esponsibilities under COBRA are

expressly assigned to the 'plan sponsor' and 'administrator,' as defined by the act . . . [and] [t]he relevant inquiry in regard to the COBRA coverage concerns [the defendant's] potential status as a plan sponsor or administrator.").

The official plan administrator was Durafiber. (ASA (Doc. 25-1) ¶ 1.26.) In fact, the Plan explicitly states that BCBS "does not assume any responsibility hereunder for COBRA administration services or for determining an individual's eligibility for COBRA coverage." (Id. ¶ 4.3.) Plaintiff identifies nothing that shifts COBRA responsibility to BCBS in light of the explicit contractual provisions to the contrary. See Barnett v. Perry, No. CCB-11-CV-00122, 2011 WL 5825987, at *8 (D. Md. Nov. 16, 2011) ("[T]he [plaintiffs] . . . assert that [the defendant] is a Plan fiduciary (for purposes of the ERISA claim) but do not allege facts that, if true, would show that [the defendant] is a Plan administrator."). Nor do Plaintiffs provide any cases to support the idea that a functional administrator can, or should, be liable for COBRA claims in spite of the Plan naming a different plan administrator. Plaintiff points to Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371 (4th Cir. 2001) as the source of BCBS' supposed "duty to offer accurate and complete information." (Pls.' BCBS Resp. (Doc. 31) at 19.) However, in Griggs, the defendant who owed

-28-

this duty was undisputedly the plan administrator and acting as
a fiduciary when "engaged in the administration or management of
its . . . plan." Griggs, 237 F.3d at 379. Thus, this court will
grant BCBS' motion to dismiss this claim.

### E. State Law Claims

Plaintiffs initially brought claims for unjust enrichment,
(Second Am. Compl. (Doc. 20) ¶¶ 209-14), and violation of the
North Carolina Unfair and Deceptive Trade Practices Act
("UDTPA"), (id. ¶¶ 197-207). Plaintiffs also brought claims for
breach of contract, (id. ¶¶ 216-18); fraudulent concealment,
(id. ¶¶ 220-27); conversion and misappropriation of funds, (id.
¶¶ 229-33); and constructive fraud, (id. ¶¶ 235-38). Plaintiffs
have since conceded that their state law claims are preempted by
ERISA. (Pls.' Resp. to FTI (Doc. 32) at 8.) Thus, these counts
will be dismissed.

## IV. CONCLUSION

For the aforementioned reasons,

**IT IS HEREBY ORDERED** that the Motion to Dismiss, (Doc. 24),
filed by Defendants Frank Papa and Erwin Bette is **GRANTED IN
PART AND DENIED IN PART.** The motion is **GRANTED** as to claims
three and four, the Third Cause of Action and the Fourth Cause

-29-

of Action. The motion is **DENIED** as to claims one and two, the
First Cause of Action and the Second Cause of Action.

     **IT IS FURTHER ORDERED** that the Motion to Dismiss, (Doc.
26), filed by Defendant Blue Cross and Blue Shield of North
Carolina is **GRANTED IN PART AND DENIED IN PART**. The motion is
**GRANTED** as to claims three and four, the Third and Fourth Causes
of Action. The motion is **DENIED** as to claims one and two,
however, claim one, the First Cause of Action, is limited to a
breach of fiduciary claim based upon misrepresentation of
coverage by pre-certification. Any other claims of breach of
fiduciary duty as to Blue Cross and Blue Shield of North
Carolina are **DISMISSED**

     **IT IS FURTHER ORDERED** that the Motion to Dismiss the Second
Amended Complaint, (Doc. 28), filed by Defendant FTI Consulting,
Inc., is **GRANTED** and all claims against Defendant FTI
Consulting, Inc., are hereby **DISMISSED**. FTI's Motion to Strike
in the Alternative, (Doc. 28), is **DENIED.**

     **IT IS FURTHER ORDERED** that Plaintiffs' remaining claims
(the Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of
Action) are **DISMISSED.**

Case 1:19-cv-01234-WO-LPA   Document 39   Filed 03/22/21   Page 30 of 31

This the 22nd day of March, 2021.

_____
United States District Judge